IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **HAROLD R. BERK** | : | CIVIL ACTION |
| | : | |
| v. | : | NO.   23-1437 |
| | : | |
| ROTHMAN INSTITUTE ORTHOPEDIC FOUNDATION, RECONSTRUCTIVE ORTHOPEDIC ASSOCIATES II, LLC, ROTHMAN ORTHO PA HOLDCO I., P.C., RECONSTRUCTIVE ORTHOPEDIC ASSOCIATES II, LLC, ROTHMAN ORTHO PA HOLDCO III, P.C., ROTHMAN ORTHO PA HOLDCO IV, P.C., ROTHMAN ORTHOPEDIC SPECIALTY HOSPITAL, L.P., ROTHMAN ORTHOPEDIC SPECIALTY HOSPITAL, LLC, ALEXANDER R. VACCARO, MD, DAVID I. PEDOWITZ, MD, STEVEN M. RAIKIN, MD | : : : : : : : : : : : : : | |

## MEMORANDUM

**MURPHY, J.**                                                                                                   March 28, 2024

Many states require an affidavit of merit from a doctor to bring a medical malpractice case. Here, the plaintiff asked his new doctors to provide him with an affidavit so that he could sue his old doctors for malpractice. They declined. So the plaintiff sued his new doctors to force them to comply with his wishes. The case must be dismissed because the plaintiff could identify no basis for the relief he seeks.

**I.       Background**

We draw the allegations — which we accept as true — from the amended complaint. DI 21. Mr. Berk is a retired lawyer and Florida resident. *Id.* ¶ 5. He was at his summer home near the shore in Delaware when he fell and hurt his ankle. *Id.* ¶ 20. He received treatment from several doctors and entities, including Dr. Wilson Choy, Beebe Medical Center, and Encompass Health Rehabilitation Hospital (the "third-party medical providers"). *Id.* ¶¶ 20-36. The third-

party medical providers misdiagnosed, mistreated, and injured Mr. Berk.  *Id.*  He then went on to receive treatment from defendant Dr. Steven Raikin, who at the time was an employee of defendant Rothman Institute.  *Id.* ¶ 37.  There are several Rothman entities named as defendants, but it appears that they may be treated together for our purposes.

At some point, Mr. Berk decided to sue the third-party medical providers.  *Id.* ¶ 57.  He asked Dr. Raikin to prepare an affidavit of merit — a requirement of Delaware law — for his malpractice claim against them.  *Id.*  He was not able to get a response because Dr. Raikin had retired.  *Id*. ¶ 58-60.  So Mr. Berk approached defendant Dr. David Pedowitz, who had taken over as head of the foot and ankle practice at the Rothman Institute.  *Id.* ¶¶ 61-63.  Mr. Berk also wrote to defendant Dr. Alexander Vaccaro, the CEO of the Rothman Institute.  *Id*. ¶¶ 64-65.  Dr. Vaccaro's administrative assistant told Mr. Berk that "Rothman would no longer review medical records of their own patients if litigation against third party physicians or hospitals was contemplated."  *Id.* ¶ 66.  And eventually, Dr. Raikin declined to assist Mr. Berk "due to Rothman's policies and procedures."  *Id.* ¶ 69.  Mr. Berk then sued the defendants on the theory that there is in essence a conspiracy among health care providers to block deserving patients from obtaining affidavits of merit in violation of their ethical duties.  *Id.* ¶¶ 74-84.  Mr. Berk identifies three causes of action: (i) breach of fiduciary duty (meaning, the doctors' alleged duty to provide affidavits of merit to their deserving patients); (ii) violation of the Sherman Act and Clayton Act (meaning, the doctors' alleged conspiracy in restraint of trade by agreeing not to cooperate with their own patients' litigation needs); and (iii) intentional deprivation of legal recourse by withholding the affidavits.

The defendants filed two motions to dismiss. First, several Rothman Institute entities — Rothman Institute Orthopaedic Foundation, Rothman Ortho PA Holdco III, PC, Rothman Ortho PA Holdco VI, PC, Rothman Orthopaedic Specialty Hospital, LP, and Rothman Orthopaedic Specialty Hospital, LLC — moved to dismiss because they are the wrong defendants, meaning that they are unused entities, or are entities that did not provide medical services to Mr. Berk. DI 25. Mr. Berk agreed to the dismissal of all but Rothman Orthopaedic Specialty Hospital LLC, which he suggests is somehow, albeit confusingly, connected to his allegations. DI 34. But there is no need to resolve which entity belongs in the case, since our ruling on the substantive motion (DI 24) terminates the case in favor of the so-called wrong defendants as well.

The other motion is the substantive one. DI 24. Defendants argue that Mr. Berk's claims should be dismissed because a physician has no duty to give an expert opinion against his will; because there is no injury sufficient to give rise to an antitrust claim; and because there is no cause of action for deprivation of legal recourse opportunities. *Id.* Mr. Berk disagrees. DI 35.

**II.     Analysis**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Klotz v. Celentano Stadtmauer and Walentowicz LLP*, 991 F.3d 458, 462 (3d Cir. 2021) (quoting *Ashcroft*, 556 U.S. at 678).

Evaluating a motion to dismiss for failure to state a claim for relief involves a "three-step

3

process." *Lutz v. Portfolio Recovery Assocs., LLC*, 49 F.4th 323, 327 (3d Cir. 2022) (citing *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016)).  "The first step in that process requires an articulation of the elements of the claim."  *Id.*  The second step involves "disregarding any 'formulaic recitation of the elements of a ... claim or other legal conclusion,'" *id.* (quoting *Connelly*, 809 F.3d at 789), and allegations that are "so threadbare or speculative that they fail to cross the line between conclusory and the factual," *id.* at 328 (quoting *Connelly*, 809 F.3d at 790).  The third step involves taking the remaining allegations and "assuming their veracity, construing them in the light most favorable to the plaintiff, and drawing all reasonable inferences in their plaintiff's favor."  *Id.* (citing *Connelly*, 809 F.3d at 787, 790).

Mr. Berk brought this case to force his doctors to provide him with an affidavit of merit. Delaware law requires an affidavit of merit in a medical malpractice case: "No health-care negligence lawsuit shall be filed in this State unless the complaint is accompanied by: (1) An affidavit of merit as to each defendant signed by an expert witness, as defined in § 6854 of this title, and accompanied by a current curriculum vitae of the witness, stating that there are reasonable grounds to believe that there has been health-care medical negligence committed by each defendant."  18 Del. C. § 6853(a)(1).  We will address Mr. Berk's theories in the same order he presented them in his amended complaint.

### A. Mr. Berk's breach of fiduciary duty claim is dismissed because defendants had no duty to provide the affidavit of merit.

The dispositive question underlying Mr. Berk's first cause of action is: what duty? Challenged by defendants to identify the source of a duty to provide an affidavit of merit, Mr. Berk relies on what he calls the *Alexander* line of cases.  *See* DI 33 at 9-17.  *Alexander* is a 1962 decision of the Pennsylvania Superior Court adopting *per curiam* the opinion of the Court of

Common Pleas of Philadelphia ordering a new trial in a car crash case. *Alexander v. Knight*, 177 A.2d 142 (Pa. Super. Ct. 1962), *adopting,* 25 Pa. D. & C.2d 649 (Phila. Cty. Ct. Com. Pl. 1961). In that case, the defense lawyers employed a doctor named Ezickson whose job was to "interview doctors for injured plaintiffs and to secure a report from them." *Id.* at 146. In *Alexander*, Dr. Ezickson obtained said report from plaintiff's doctor, Dr. Murtagh, for $50. *Id.* "This report was given despite the fact that Dr. Murtagh never received his patient's permission." *Id.* This had nothing to do with the new trial order, but the Superior Court understandably took a sidebar to condemn "Dr. Ezickson's role in inducing Dr. Murtagh's breach of his confidential relationship to his own patient." *Id.* In doing so, the Superior Court explained that doctors owe patients a duty that includes "a duty to aid the patient ***in*** litigation, to render reports when necessary and to attend court when needed." *Id.* (emphasis added). The doctor "owes a duty of conscience to speak the truth," but he need speak "only at the proper time." *Id.*

Mr. Berk is correct that later courts discussed and explored *Alexander*'s passing observation, but he identifies no decision that either (i) makes *Alexander*'s observation binding law or (ii) recognizes a duty for one's doctor to prepare an affidavit of merit or anything analogous. Rather, *Alexander* suggests that a doctor stands in a fiduciary capacity as to his patient's confidences, and in litigation should not sneak around behind his patient's back to provide opposing counsel an adverse opinion. *E.g., Griffith-Johnson v. ProMedica Senior Care of Philadelphia, PA, LLC*, 2023 WL 5939852, *6 (E.D. Pa. Sept. 12, 2023) (discussing *Alexander*); *White v. Behlke, Rabin and OB/GYN Consultants, Inc.*, 65 Pa. D. & C.4th 479, 484 (Lackawanna Cty. Ct. Com. Pl. 2004) (same). The reach and strength of *Alexander* could be debated, but there is no indication that it may stretch so far as Mr. Berk suggests. *Compare*

5

*Manion v. N.P.W. Med. Ctr., Inc.*, 676 F. Supp. 585, 588-91 (M.D. Pa. 1987) *with MacDonald v. United States*, 767 F. Supp. 1295, 1299-1300 (M.D. Pa. 1991).

To the contrary, as defendants point out, Pennsylvania courts have sensibly held that while expert witnesses like doctors may be compelled to testify like anyone else, that does not reach expert opinion testimony. The Pennsylvania Supreme Court aptly explained: "The process of the courts may always be invoked to require witnesses to appear and testify to any facts within their knowledge; but no private litigant has a right to ask them to go beyond that. . . . [T]he private litigant has no more right to compel a citizen to give up the product of his brain than he has to compel the giving up of material things." *Pa. Co. for Insurances on Lives & Granting Annuities. v. City of Philadelphia*, 262 Pa. 439, 441-42 (Pa. 1918).

Because the defendants had no duty to provide Mr. Berk with an affidavit of merit, his claim for breach of fiduciary duty must be dismissed.

> **B.     Mr. Berk's claim of conspiracy in restraint of trade under the Sherman Act and Clayton Act is dismissed because there is no underlying injury.**

The gist of Mr. Berk's antitrust allegations is that the medical-provider establishment, so to speak, is working together to frustrate medical malpractice claims by withholding affidavits of merit from worthy patients. There are some obvious *Twombly* problems with the allegations, but setting those aside, the antitrust claims fail because they do not state an adequate antitrust injury.

"A private antitrust plaintiff must further establish that it suffered an antitrust injury as a result of the misconduct and therefore possesses the standing necessary to seek relief." *Race Tires Am., Inc. v. Hoosier Racing Tire Corp.*, 614 F.3d 57, 75 (3d Cir. 2010) (quotation omitted). "[T]he injury prong requires: (1) harm of the type the antitrust laws were intended to prevent; and (2) an injury to the plaintiff which flows from that which makes defendant's acts unlawful."

6

*Id.* at 76 (quotation omitted).  As we have already explained, Mr. Berk has not stated a plausible theory for why he was entitled to an affidavit of merit.  Therefore, he has no basis to claim injury of any kind here.  Nor is there any indication in the amended complaint of how Mr. Berk's suggested conspiracy "affected the prices, quantity or quality of goods or services, not just his own welfare." *Mathews v. Lancaster Gen. Hosp.*, 87 F.3d 624, 641 (3d Cir. 1996) (quoting *Tunis Bros. Co. v. Ford Motor Co.*, 952 F.2d 715, 728 (3d Cir. 1991)).  Therefore, Mr. Berk's antitrust claims must be dismissed.

> C. **Mr. Berk's claim of intentional deprivation of legal recourse fails because it is not a cognizable cause of action and the defendants were entitled to refuse to provide the affidavit of merit.**

Again challenged by defendants, Mr. Berk did not identify any authority shedding light on his claim of intentional deprivation of legal recourse — which by all appearances does not exist.  Rather, Mr. Berk characterized his claim as tortious interference with a prospective contractual relationship.  DI 33 at 25 (citing *Glenn v. Point Park College*, 441 Pa. 474, 477 (1971)).  We accept his recharacterization *arguendo* and consider whether it is adequately pled.  It is not.

The amended complaint does not identify any prospective contractual or business relationship.  In his opposition brief, Mr. Berk appears to suggest that he had a business relationship with the third-party medical providers in the malpractice case "as he was a plaintiff and they were defendants," so any resulting judgment would be "like an enforceable existing contract."  DI 33 at 27-28.  Mr. Berk further reasons that when the defendants in this case refused to provide the affidavit of merit, that "resulted in actual damage to [him] through loss of a substantial, enforceable court judgment." *Id.* at 28.  It is not necessary to explore the nuances

7

of Mr. Berk's theory (or force him to file a second amended complaint stating it expressly) because no matter how stated, the theory cannot succeed because defendants had no obligation whatsoever to provide the affidavit of merit. Because defendants were free to decline, they could not have been interfering in the manner Mr. Berk suggests, and this claim, too, must be dismissed.

### III. Conclusion

Mr. Berk's attempt to force his doctors to provide him with an affidavit of merit fail. This case is dismissed. Because Mr. Berk already had a chance to amend his complaint in light of defendants' arguments, and any further attempts to amend would be futile, we dismiss the case with prejudice.